# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ANCHOR BLUE RETAIL | : | |
| GROUP, INC., *et al.*, | : | Case Number 09-11770 (PJW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: June 30, 2009 at 9:30 a.m.** |
| | : | **Objection Deadline: June 23, 2009 at 4:00 p.m.** |
| | : | **(extended for UST to June 26, 2009 at 10:00 a.m.)** |
| | : | |
| | : | **Re: Docket No. 122** |

### ACTING UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPROVING A SENIOR EXECUTIVE INCENTIVE PROGRAM

In support of her Objection to the Motion of the Debtors for approval of the Senior Executive Incentive Program (the "Motion"), Roberta A. DeAngelis, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

### Introduction

1. This Court has jurisdiction to hear and determine this Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by this Objection.

**Preliminary Statement**

4. The U.S. Trustee objects to the Motion because it lacks sufficient information to allow interested parties an opportunity to properly analyze the proposed Bonus Plan (as defined *infra*) and thus, the Debtors have failed to meet their legal and factual burden of proof.

5. In light of clear congressional intent under the BAPCPA to limit payments to a debtor's management in bankruptcy cases, the Debtors have not demonstrated in the Motion that the senior executive bonus payments proposed therein are appropriate under Section 503(c) of the Bankruptcy Code.

6. Additionally, the Bonus Plan contains virtually no incentive criteria and does not establish any minimum trigger for the payment of the proposed bonuses. Thus, it is effectively a plan developed with the primary purpose of retaining the participating employees. This is true because the Bonus Plan guarantees payments to the senior executives once the pre-ordained sales of the Debtors' assets are consummated. These proposed assets sales, one of which is a credit bid, are designed to provide virtually no value to creditors other than the secured lenders. As such, there is no incentive-based criteria here.

7. Furthermore, the Debtor's implied assertion that the Bonus Plan is not subject to 11 U.S.C. 503(c), but rather the "business judgement rule" disregards the Bankruptcy Code standards for assessing bonus payments to individuals that are executives of a company and clearly classified as "insiders" under the Bankruptcy Code.

## Statement of Facts

8. On May 27, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On June 5, 2009, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

10. The Debtors are proposing to sell substantially all of their assets through the following three separate transactions: (i) the sale of the Debtors' Levi's® and Dockers® outlet businesses to Levi Strauss & Co. (the "Levi's Sale"); (ii) the sale of the Anchor Blue store businesses in a credit bid to Ableco Finance LLC (the "Anchor Blue Sale"); and (iii) store closing sales of the remaining stores.

11. In the Motion, the Debtors seek approval of the Senior Executive Incentive Program (the "Bonus Plan"). The participants in the Bonus Plan are four (4) senior executives, all of whom are "insiders" as defined under the Bankruptcy Code. The total aggregate payments proposed in the Bonus Plan are $800,000.02. The Bonus Plan payments are divided into two payments, which are triggered upon the closing of the Levi's Sale and the Anchor Blue Sale respectively.

## Argument

12. In light of clear congressional intent under the BAPCPA to limit unchecked retention and bonus payments to a debtor's senior management in Chapter 11 cases, the U.S. Trustee objects to the Motion because the Debtors have not demonstrated that the executive payments proposed therein are appropriate under Section 503(c) of the Bankruptcy Code. Specifically, the proposed

3

bonus payments to the senior executives have no incentive-based criteria. There is no significant hurdle to achieve by these executives because the bonuses are paid even if the pre-determined stalking horse bids are the successful purchasers. In that case, the Bonus Plan simply acts as a retention plan for the insiders.

13. Furthermore, the Debtors' assertion that the proposed bonus payments should be subject to review under the "business judgement rule" fails to accord proper meaning to the limitations imposed by Section 503(c)(3) of the Bankruptcy Code. That position lends no credence to Congress' intent in adopting the new limitations imposed under Section 503(c), *i.e.,* to scrutinize otherwise unchecked retention and bonuses plans structured to compensate debtor management at the expense of creditors.

*The Bonus Plan Violates Section 503(c)(1) of the Bankruptcy Code*

14. The Bonus Plan is performance- based in name only and is factually a creatively titled key employee retention plan. In fact, the Bonus Plan has virtually no incentive criteria to it because it is simply based on the Debtors consummating the pre-ordained sales of their assets. *See In re Dana Corp.*, 358 B.R. 567, 582 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly not 'lay-ups'"); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan 19, 2006) (plan that provided for payments exclusively upon improvement to "stalking horse" bid did not violate 11 U.S.C. § 503(c)(1)).

15. To demonstrate the truly retentive (not incentive) nature of the Bonus Plan, all the court needs to do is look at the asset sales that act as the triggers for payment under the Bonus Plan. The first trigger for the bonus payments is the closing of the Levi's Sale. Levi's is the stalking horse

4

bidder that is effectively purchasing their brand names under the retail stores back from the Debtors. Levi's is the obvious purchaser of these assets, especially in light of the licensing agreement between Levi's and the Debtors. There is simply no incentive criteria here. All that needs to be done is for this stalking horse bid to close

16. The second trigger for the bonus payments is the closing of the Anchor Blue Sale. This might even be more problematic because the stalking horse bid is a credit bid by a secured lender. Again, there is nothing tied into the bonus structure to incentivize the executives to bring more value into the estate. The bonuses are simply structured to be paid at closing of the credit bid, which will provide little to no value to the creditors other than the secured lenders. Therefore, the executives receive bonuses simply because a pre-ordained deal will close. That is not a proper incentive and serves strictly as a retentive-based bonus plan.

17. Under Section 503(c)(1) of the Bankruptcy Code, the Debtor must "based on evidence in the record" demonstrate all three of the required elements set forth in Section 503(c)(1). Section 503(c)(1) provides, in pertinent part, as follows:

> (1) a transfer made to, or an obligation incurred for the benefit of, <u>an insider of the debtor</u> for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court <u>based on evidence in the record</u> that:
>
> > (A) The transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> >
> > (B) The services provided by the individual are essential to the survival of the business; and
> >
> > (C) either (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to <u>non-management employees</u> for any purpose during the calendar year in which the transfer is made or the

5

obligation is incurred; or (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such <u>nonmanagement employees</u> during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred (Emphasis added).

18. Section 101(31) of the Bankruptcy Code defines an "insider" of a corporation as an "officer," a "director", or a "person in control."

19. The Debtors have not satisfied all of the elements of Section 503(c)(1) and thus, the Debtors' request to make certain bonus payments to "insiders" should be denied.

*Bonus Payments Not Justified by the Facts and Circumstances*

20. The U. S. Trustee does not dispute that the payment of "wages, salaries, and commissions for services rendered after the commencement of the case" to Debtors' employees are valid administrative expense claims for "the actual, necessary costs and expenses of preserving the estate." See 11 U.S.C. § 503(b). However, Section 503(c) imposes certain limitations on such payments as Section 503(c) provides that "[n]otwithstanding subsection (b), there shall neither be allowed, nor paid . . ." certain transfers to insiders and members of Debtors' management unless certain conditions are met. Accordingly, prior to making such payments, the Debtors must "based on evidence in the record" demonstrate the required elements set forth in Section 503(c)(3).

21. Section 503(c)(3) provides, in pertinent part, as follows:

(3) other transfers or obligations that are outside the ordinary course of business and <u>not justified by the facts and circumstances of the case</u>, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition. (Emphasis added).

6

22. Administrative expenses are given priority status and paid ahead of other unsecured claims. See 11 U.S.C. § 507. *In re Insilco Technologies, Inc.,* 309 B.R. 111, 114 (Bankr. D. Del. 2004). In order to hold administrative expenses to a minimum and to maximize the value of the estate Section 503(b) is narrowly construed. *See In re N.P. Min. Co., Inc.,* 963 F.2d 1449, 1454 (11th Cir. 1992). To qualify for administrative priority status, an expense must arise from a transaction that accorded the estate an actual benefit. *Insilco Technologies*, 309 b.R. at 114 (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl Energy, Inc.)*, 181 F.3d 527, 532-533(3d Cir. 1999).

23. Accordingly, the Debtors must demonstrate that the proposed bonuses are "justified by the facts and circumstances of the case" and are necessary to preserve the value of the estate.

24. The Motion fails to provide adequate information for parties in interest to evaluate the proposed bonus payments. What little information is provided indicates that the Bonus Plan is a disguised retention plan, which at best contains only a limited incentive component as the senior executives receive their bonuses regardless of the total amount realized from the asset sales by the Debtors. This is especially true because both sales involve pre-ordained stalking horse bids that provide little to no value to the estate. Accordingly, the Motion should be denied.

25. The U.S. Trustee reserves and any all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection and to take any further action as may be required or to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent.

WHEREFORE, the Acting United States Trustee respectfully requests this Court to issue a ruling denying the Motion, and award such other relief as this Court deems appropriate under the circumstances.

                                      Respectfully submitted,

                                      ROBERTA A. DEANGELIS
                                    Acting United States Trustee

                        BY:    _/s/ David M. Klauder_
                                  David M. Klauder
                                  Trial Attorney
                                  Office of the United States Trustee
                                  J. Caleb Boggs Federal Building
                                  844 King Street, Suite 2207
                                  Wilmington, DE 19801
                                  (302) 573-6491
                                  (302) 573-6497 fax

Dated: June 26, 2009