Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including, without limitation, jurisdiction to:

a. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

b. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

c. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.C of the Plan adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

d. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

e. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, *provided, however,* that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

f. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

g. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

h. issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

i. enforce Articles IX.A, IX.B and IX.C of the Plan;

j. enforce the Injunction set forth in Article IX.E of the Plan;

k. resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX of the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

RLF1 3761176v. 1

l.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

m.      resolve any other matters that may arise in connection with or relate to the Settlement, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

n.      enter an order and/or the decree contemplated in Fed. R. Bankr. P. 3022 concluding the Chapter 11 Cases.

## K.      Miscellaneous Provisions

### 1.      Final Fee Applications

The deadline for submission by Professionals of applications for Bankruptcy Court approval of Accrued Professional Compensation shall be forty-five (45) days after the Effective Date.

### 2.      Payment of Statutory Fees

All fees payable pursuant to Article 1930 of title 28 of the United States Code after the Effective Date, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid prior to the closing of the Chapter 11 Cases on the earlier of when due or the Effective Date, or as soon thereafter as practicable by the HUB Liquidating Trust.

### 3.      Modification of Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, after consultation with the Creditors' Committee, and consistent with the terms of the Settlement, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Liquidating Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 4.      Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, after consultation with the Creditors' Committee, and to file subsequent chapter 11 plans, consistent with the terms of the Settlement. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

## 5. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## 6. Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## 7. Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

## 8. Article 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

## 9. Section 1125(e) Good Faith Compliance

The Debtors, the Creditors' Committee and its individual members, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

## 10. Further Assurances

The Debtors, Liquidating Trustee, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

## 11. Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

Hub Holding Corp., *et al.*
1304 SW 160th Avenue, Box 145
Sunrise, Florida 33326
Attn: Duane R. Wolter

-and -

Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
Attn: Mark D. Collins, Esq.
      Jason M. Madron, Esq.
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*With a copy to:*

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, Suite 1700
Wilmington, Delaware 19801
Attn: Bradford J. Sandler, Esq.
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

## 12.    Filing of Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## 13.    No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed. R. Bankr. P. 3020(e) and 7062.

## 14.    Aid and Recognition

The Debtors or Liquidating Trustee, as the case may be, shall, as needed to effect the terms of the Plan, request the aid and recognition of any court or judicial, regulatory or administrative body in any province or territory of Canada or any other nation or state.

## IV.    ALTERNATIVES TO THE PLAN

The Plan reflects the discussions held among the Debtors and the Creditors' Committee. The Debtors have determined that the Plan is the most practical means of providing maximum recoveries to creditors. Alternatives to the Plan that have been considered and evaluated by the Debtors and the Creditors' Committee during the course of these Chapter 11 Cases include (a) liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code and (b) an alternative chapter 11 plan. The Debtors' thorough consideration of these alternatives to the Plan has led the Debtors to conclude that the Plan, in

comparison, provides a greater recovery to creditors on a more expeditious timetable, and in a manner that minimizes certain inherent risks in any other course of action available to the Debtors.

## A.     Liquidation Under Chapter 7 of the Bankruptcy Code

If the Plan or any other chapter 11 plan for the Debtors cannot be confirmed under section 1129(a) of the Bankruptcy Code, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, in which case, a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code. If a trustee is appointed and the remaining assets of the Debtors are liquidated under chapter 7 of the Bankruptcy Code, holders of certain Allowed Claims may receive lesser distributions on account of their Allowed Claims and would likely have to wait a longer period of time to receive any such distributions than they would under the Plan.

## B.     Alternative Chapter 11 Plan

If the Plan is not confirmed, the Debtors or any other party in interest may attempt to formulate an alternative chapter 11 plan which might provide for the liquidation of the Debtors' assets other than as provided in the Plan. However, since substantially all of the Debtors' assets have already been liquidated and the Plan provides for the distribution of the proceeds of the liquidation and any non-liquidated assets in accordance with the priorities established by the Bankruptcy Code, the Debtors believe that any alternative chapter 11 plan will be substantially similar to the Plan. Any attempt to formulate an alternative chapter 11 plan would necessarily delay creditors' receipt of distributions yet to be made and, due to the incurrence of additional administrative expenses during such period of delay, may provide for smaller distributions to holders of Allowed Claims than are currently provided for in the Plan. Thus, the Debtors believe that the Plan will enable all creditors to realize the greatest possible recovery on their respective Claims.

## V.     Certain Federal Income Tax Consequences of the Plan

Circular 230 Disclaimer: To ensure compliance with requirements imposed by the Internal Revenue Service (the "IRS"), we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code of 1986, as amended (the "IRC"), or (ii) promoting, marketing or recommending to another party any transaction or tax matter(s) addressed herein.

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtors and to holders of General Unsecured Claims and the Ableco Unsecured Claim. This summary does not address the federal income tax consequences to holders of Interests and to holders whose Claims or Interests (i) are paid in full, in Cash, or that are otherwise not Impaired under the Plan (i.e., Allowed Wachovia Claim, Allowed Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims) or (ii) that are not receiving any distribution under the Plan.

This summary is based on the IRC, the Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rulings and pronouncements of the IRS currently in effect. These authorities are all subject to change, possibly with retroactive effect, and any such change could alter or modify the federal income tax consequences described below.

This summary does not address foreign, state or local income tax consequences, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax

31

consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, investors in pass-through entities, broker-dealers and tax-exempt organizations). Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim.

Due to the possibility of changes in law, differences in the nature of various Claims, differences in individual Claim holders' methods of accounting, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties. No ruling has been applied for or obtained from the IRS, and no opinion of counsel has been requested or obtained by the Debtors with respect to any of the tax aspects of the Plan. No representations are being made regarding the particular tax consequences of the Plan to the Debtors or any holder of a Claim or Interest.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH HOLDER. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.**

A.      **Federal Income Tax Consequences to Holders of General Unsecured Claims**

In accordance with the Plan, the Debtors' assets will be transferred by the Debtors to the HUB Liquidating Trust for the benefit of holders of General Unsecured Claims and Ableco Unsecured Claims against the Debtors (such holders are referred to in this section as "Unsecured Creditors").

The federal income tax consequences to Unsecured Creditors will differ and will depend on factors specific to each such Creditor, including, but not limited to: (i) whether the Unsecured Creditor's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Unsecured Creditor's Claim, (iii) the Unsecured Creditor's holding period for the claim, (iv) whether the Unsecured Creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the Unsecured Creditor reports income on the accrual or cash basis method, and (vi) whether the Unsecured Creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

Generally, an Unsecured Creditor will recognize gain or loss equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Pro Rata share of the proceeds of the Debtors' assets received under the Plan. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such Unsecured Creditor. If a Claim is a capital asset and it has been held for more than one year, such Creditor will realize long-term capital gain or loss. An Unsecured Creditor will typically recognize gain or loss on the Effective Date as a result of the transfer of Cash of the Debtors to the HUB Liquidating Trust for the benefit of such Unsecured Creditor in accordance with the plan.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH UNSECURED CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.**

### B.     Federal Income Tax of the Liquidating Trust

#### 1.     Transfer of Assets to the Liquidating Trust

Pursuant to the Plan, as of the Effective Date, holders of Allowed Claims against the Debtors are required for all federal income tax purposes, to treat the Liquidating Trust Fund transferred by the Debtors to the Hub Liquidating Trust as having been transferred directly to such holders (with each such holder receiving an undivided interest in the specific Liquidating Trust Fund, the proceeds of which such holder may receive provided distribution in respect of its interests in the Hub Liquidating Trust are made), and then transferred by such holders to the Hub Liquidating Trust in exchange for beneficial interests therein.

#### 2.     Classification as a Liquidating Trust

The Hub Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity, but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). In Revenue Procedure 82-58, as modified and amplified by Revenue Procedures 91-15 and 94-45 (the "Revenue Procedures"), the IRS set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a bankruptcy plan. The Hub Liquidating Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with the Revenue Procedures, all parties (including the Debtors, the Liquidating Trustee and holders of Allowed Unsecured Claims) are required to treat, for federal income tax purposes, the Hub Liquidating Trust as a grantor trust of which its creditor-beneficiaries are the owners and grantors, and the following discussion assumes that the Hub Liquidating Trust would be so treated for federal income tax purposes. However, no ruling has been requested from the IRS concerning the tax status of the Hub Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Hub Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequence to the Hub Liquidating Trust and its creditor-beneficiaries could vary from those discussed herein (including the potential for an entity-level tax).

#### 3.     Tax Reporting

For federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee, and holders of Allowed Claims) will treat the Hub Liquidating Trust as a grantor trust of which such holders are the owners and grantors. Thus, each holder (and any subsequent holders) of interests in the Hub Liquidating Trust will be treated as the direct owner of an undivided interest, for all federal income tax purposes, in the specific assets of the Hub Liquidating Trust, the proceeds of which such holder may received provided distributions in respect of its interest in the Hub Liquidating Trust are made. Accordingly, each holder of a beneficial interest in the Hub Liquidating Trust will be required to report on its federal income tax return(s) the holder's allocable share of any income, gain, loss, deduction or credit recognized or incurred by the Hub Liquidating Trust. The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deduction or losses may depend on the particular situation of such holder.

33

The federal income tax reporting obligations of a holder of a beneficial interest in the Hub Liquidating Trust is not dependent upon the Hub Liquidating Trust distributing any Cash or other proceeds. Therefore, a holder of a beneficial interest in the Hub Liquidating Trust may incur a federal income tax liability regardless of the fact that the Hub Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the holder. If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of any beneficial interests in the Hub Liquidating Trust it holds, the holder may be entitled to a subsequent loss or deduction. In general, a distribution of Cash from the Hub Liquidating Trust to a holder of a beneficial interest will not be subject to tax.

The Liquidating Trustee will file with the IRS returns for the Hub Liquidating Trust as a grantor trust pursuant to Regulation § 1.671-4(a). The Liquidating Trustee will also send to each holder of a beneficial interest in the Hub Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return.

### C. Withholding and Reporting

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the rate of 28% unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Liquidating Trustee may be required to withhold the applicable percentage of any payments made to a holder who does not provide his, her or its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

**THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.**

## VI. SOLICITATION AND VOTING PROCEDURES

On January _____, 2011, the Bankruptcy Court entered the Disclosure Statement Order approving the adequacy of the Disclosure Statement and approving the Solicitation Procedures. A copy of the Solicitation Procedures is attached as an exhibit to the Disclosure Statement Order. In addition to approving the Solicitation Procedures, the Disclosure Statement Order established certain dates and deadlines, including the date for the Confirmation Hearing, the deadline for parties to object to confirmation, the Voting Record Date and the Voting Deadline. The Disclosure Statement Order also approved the forms of Ballots and certain confirmation-related notices. The Disclosure Statement Order and the Solicitation Procedures should be read in conjunction with the Disclosure Statement. Capitalized terms used herein that are not otherwise defined in the Disclosure Statement or Plan shall have the meanings ascribed to them in the Solicitation Procedures.

34

A. **Solicitation Package**

1. **Contents of Solicitation Package**

The following materials, all of which shall be submitted to holders of Claims eligible to vote on the Plan on a compact disc in PDF format, shall constitute the Solicitation Package, *provided, however,* that all holders of Claims eligible to vote on the Plan shall receive a Ballot only in paper format:

- Plan;

- Disclosure Statement;

- Disclosure Statement Order;

- Confirmation Hearing Notice; and

- appropriate Ballot and voting instructions.

2. **Distribution of Solicitation Package**

The Debtors shall serve, or caused to be served, all of the materials in the Solicitation Package on holders of Class 2 Ableco Claims and holders of Class 5 General Unsecured Claims on a compact disc in PDF format (other than the Ballots which shall be served in paper format).

The Debtors shall serve, or caused to be served, a Confirmation Hearing Notice and the appropriate Notice of Non-Voting Status on holders of Class 1 Wachovia Secured Lender Claim, Class 3 Other Secured Claims, Class 4 Priority Non-Tax Claims and Class 6 Equity Interests.

The Debtors also shall serve, or cause to be served, all of the materials in the Solicitation Package (except Ballots) on a compact disc in PDF format on (i) the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee; (iii) counsel to the agent for the Debtors' postpetition secured lenders, (iv) counsel to the agents for the Debtors' prepetition secured lenders; (v) counsel to the Debtors' controlling shareholder; and (vi) all entities requesting notice pursuant to Bankruptcy Rule 2002 as of the Voting Record Dates.

The Confirmation Hearing Notice shall inform parties that the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Order and all other Solicitation Package materials (except Ballots) can be obtained by: (a) accessing the Debtors' website at www.kccllc.net/anchorblue; (b) by requesting a paper copy from Kurtzman Carson Consultants LLC, the Debtors' claims, solicitation and voting agent (the "Voting Agent"), by writing to Hub Holding Corp. Tabulation Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, or calling (866) 967-0679.

In addition, the Debtors will mail, or cause to be mailed, the Solicitation Package to any of the persons or entities listed below:

- all persons or entities, as applicable, who, on or before the Voting Record Date, have timely Filed a proof of claim (or an untimely proof of claim that has been allowed as timely by the Bankruptcy Court under applicable law on or before the Voting Record Date): (i) that has not been expunged, disallowed, disqualified or suspended prior to the Voting Record Date; and (ii) that is not the subject of a pending objection on the Voting Record Date;

- all persons or entities, as applicable, listed in the Debtors' Schedules as holding a noncontingent, liquidated, undisputed Claim as of the Voting Record Date, except to the extent that such Claim was paid, expunged, disallowed, disqualified or suspended prior to the Voting Record Date;

- all persons or entities, as applicable, that hold Claims pursuant to an agreement or settlement with the Debtors executed prior to the Voting Record Date, as reflected in a court pleading, stipulation, term sheet, agreement or other document Filed with the Bankruptcy Court, in an Order entered by the Bankruptcy Court, or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, regardless of whether a proof of Claim has been Filed;

- the holder of any Disputed Claim that has been temporarily allowed to vote pursuant to a Resolution Event;

- the Securities and Exchange Commission;

- the Internal Revenue Service; and

- the United States Attorney for the District of Delaware.

The Debtors shall make every reasonable effort to ensure that creditors who have more than one Claim in a Class (as defined in the Plan) receive no more than one set of the Solicitation Package materials.

In addition to the above, the Debtors shall, one time after the Disclosure Statement Hearing, publish the Confirmation Hearing Notice in *The New York Times* (National Edition) to provide notification to those persons who may not receive notice by mail.

**B.      Voting Instructions and General Tabulation Procedures**

**1.      Voting Record Dates**

The Bankruptcy Court has approved January 10, 2011, as the Voting Record Date.

**2.      Voting Deadline**

The Bankruptcy Court has approved February 11, 2011 at 5:00 p.m. (Pacific Standard Time), as the Voting Deadline. The Debtors may extend the Voting Deadline without further order of the Bankruptcy Court, however, the Debtors will document any such extension in the Voting Report.

For holders of all Claims or Equity Interests, KCC will answer questions regarding the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, provide additional copies of all materials and oversee the voting tabulation. KCC will also process and tabulate ballots for each Class entitled to vote to accept or reject the Plan.

**TO BE COUNTED AS VOTES TO ACCEPT OR REJECT THE PLAN, BALLOTS CAST BY HOLDERS AND MASTER BALLOTS CAST ON BEHALF OF BENEFICIAL HOLDERS IN CLASSES ENTITLED TO VOTE MUST BE RECEIVED BY KCC BY THE VOTING DEADLINE, AT THE ADDRESS LISTED ON THE APPLICABLE BALLOT,**

**WHETHER BY FIRST CLASS MAIL, OVERNIGHT COURIER OR PERSONAL DELIVERY. THE BALLOTS WILL CLEARLY INDICATE WHERE THE BALLOT MUST BE RETURNED.**

---

Ballots must be **actually received** by the Voting Agent by the Voting Deadline as follows:

---

**If sent by <u>First Class Mail, Overnight Courier</u> or <u>Personal Delivery</u>:**

Hub Holding Corp. Tabulation Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

---

If you have any questions on the procedures for voting on the Plan, please call the Voting Agent at the following telephone number:

**1-866-967-0679**

---

**IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT WHEN SUBMITTING A VOTE.**

---

**EACH BALLOT WILL CONTAIN A PROVISION STATING THAT A VOTING CREDITOR, BY VOTING, ACKNOWLEDGES HIS, HER OR ITS CONSENT TO THE RELEASE, EXCULPATION AND RELEASE PROVISIONS OF THE PLAN, AS FOLLOWS:**

---

**BY VOTING, I FURTHER ACKNOWLEDGE THAT:**

**(I)    A VOTE TO ACCEPT THE PLAN IS ALSO A VOTE TO ACCEPT THE RELEASES SET FORTH IN THE PLAN.**

**(II)    I CAN DECLINE TO CONSENT TO THE RELEASES SET FORTH IN THE PLAN  BY NOT VOTING OR VOTING TO REJECT THE PLAN.**

---

**FOR ANSWERS TO ANY QUESTIONS REGARDING SOLICITATION PROCEDURES, PARTIES MAY CALL KCC TOLL FREE AT 1-866-967-0679.**

To obtain an additional copy of the Plan, the Disclosure Statement, the Plan Supplement or other Solicitation Package materials (except Ballots), please refer to KCC's website at www.kccllc.net/anchorblue or request a copy from KCC, by writing to Hub Holding Corp. Tabulation Center, c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, or calling (866) 967-0679.

Ballots received after the Voting Deadline will not be counted by the Debtors in connection with the Debtors' request for confirmation.  The method of delivery of Ballots to be sent to

KCC is at the election and risk of each Creditor, except as otherwise provided, a Ballot will be deemed delivered only when KCC actually receives the original executed Ballot. In all cases, sufficient time should be allowed to assure timely delivery. An original executed Ballot is required. Delivery of a Ballot to KCC, as applicable, by facsimile, e-mail or any other electronic means will not be accepted. Ballots should not be sent to any of the Debtors, the Debtors' agents (other than KCC), or the Debtors' financial or legal advisors, and any Ballots sent to such parties will not be counted. The Debtors expressly reserve the right to amend from time to time the terms of the Plan (subject to compliance with the requirements of section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification).

### 3. Who May Vote

In general, a holder of a claim or interest may vote to accept or to reject a plan if no party in interest has objected to such claim or interest, and the claim or interest is impaired by the plan but the plan does not make Distributions on account of such claim or interest. If the holder of an impaired claim or interest will not receive any Distribution under the plan in respect of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan. If the claim or interest is not impaired, the Bankruptcy Code deems that the holder of such claim or interest has accepted the plan and the plan proponent need not solicit such holder's vote.

Pursuant to section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder thereof, or notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy), reinstates the maturity of such claim or interest as it existed before the default, compensates the holder of such claim or interest for any damages incurred as a result of reasonable reliance on the holder's legal right to an accelerated payment, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder thereof.

Only the following holders of Impaired Claims and Equity Interests in Voting Classes shall be entitled to vote on the Plan with regard to such Claims:

- Holders of Class 2 Ableco Claims and Class 5 General Unsecured Claims;

- Holders of Claims in Class 2 or Class 5 for which proofs of Claim have been timely Filed, as reflected on the Claims Register as of the Voting Record Dates; *provided, however,* that holders of Claims subject to a pending objection shall not be entitled to vote unless they become eligible through a Resolution Event, as set forth in more detail in the Solicitation Procedures; *provided further, however,* that if the Debtors object to a Claim on a reduce and allow basis the Claimant may, absent a Resolution Event, vote such Claim at the amount asserted by the Debtors;

- Holders of Claims in Class 2 or Class 5 that are listed in the Schedules, with the exception of those Claims that are scheduled as contingent, unliquidated or disputed (excluding such scheduled Claims that have been superseded by a timely Filed proof of Claim);

- Holders whose Claims in Classes 2 or 5 arise pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document

executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a proof of Claim has been Filed; and

- the assignee of a transferred Claim in Class 2 or 5 (whether a timely Filed or scheduled Claim) shall be permitted to vote such Claim only if the transfer or assignment has been fully effectuated pursuant to the procedures dictated by Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Dates.

### 4. Temporary Allowance of Disputed Claims for Voting Purposes

The Solicitation Procedures generally provide that holders of Disputed Claims or Disputed Interests will not be entitled to vote unless a Resolution Event occurs, *provided, however*, that if the claim is objected to on a reduce and allow basis, such person or entity shall receive a ballot and be entitled to vote for the amount asserted by the Debtors. No later than two (2) Business Days after a Resolution Event, KCC shall distribute a Ballot to the relevant holder of the Disputed Claim or Disputed Interest, which must be returned to KCC by no later than the Voting Deadline.

### 5. Establishing Claim Amounts

In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each vote:

- The Claim amount settled and/or agreed upon by the Debtors, as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

- The Claim amount Allowed (temporarily or otherwise) under the procedures set forth herein;

- The Claim amount contained in a proof of Claim that has been timely Filed by the applicable Bar Date (or deemed timely Filed by the Bankruptcy Court under applicable law) except for any amounts in such proofs of Claim asserted on account of any interest accrued after the Petition Date; *provided, however*, that Ballots cast by holders whose Claims are not listed on the Schedules, but who timely File a proof of Claim in an unliquidated or unknown amount that are not the subject of an objection, will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code, and will count as Ballots for Claims in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; *provided further, however*, that to the extent the Claim amount contained in the proof of Claim is different from the Claim amount set forth in a document Filed with the Bankruptcy Court as referenced in the Solicitation Procedures, the Claim amount in the document Filed with the Bankruptcy Court shall supersede the Claim set forth on the respective proof of Claim;

- The Claim amount listed in the Schedules, provided that such Claim is not scheduled as contingent, disputed or unliquidated and has not been paid;

- In the absence of any of the foregoing, zero.

## 6. Ballot Tabulation

The following voting procedures and standard assumptions shall be used in tabulating Ballots:

- Except as otherwise provided herein, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with confirmation;

- The Voting Agent will date and time-stamp all Ballots when received. The Voting Agent shall retain the original Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court;

- As soon as reasonably practicable before the Confirmation Hearing, unless such other date is set by the Bankruptcy Court, the Debtors will File the Voting Report with the Bankruptcy Court. The Voting Report shall, among other things, delineate every irregular Ballot including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking original signatures or lacking necessary information, received via facsimile or electronic mail, or damaged (an "Irregular Ballot"). The Voting Report shall indicate the Debtors' intentions with regard to such Irregular Ballots;

- The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Voting Agent actually receives the original executed Ballot;

- An original executed Ballot is required to be submitted by the Entity submitting such Ballot. Delivery of a Ballot to the Voting Agent by facsimile, e-mail, or any other electronic means will not be valid;

- No Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Voting Agent) or the Debtors' financial or legal advisors, and if so sent will not be counted;

- The Debtors expressly reserve the right to amend from time to time the terms of the Plan in accordance with the terms thereof (subject to compliance with the requirements of section 1127 of the Bankruptcy Code and the terms of the Plan regarding modification);

- If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot;

40

- Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, to the extent there are multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes;

- A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing and, if required or requested by the applicable Nominee or its agent, the Voting Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder or beneficial holder;

- The Debtors, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

- Neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

- Unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

- In the event a designation of lack of good faith is requested by a party-in-interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

- Subject to any contrary order of the Bankruptcy Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided*, *however*, that any such rejections will be documented in the Voting Report;

- If a Claim has been estimated or otherwise allowed for voting purposes only by an order of the Bankruptcy Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or Distribution

- If an objection to a Claim is Filed prior to the Voting Record Date, such Claim shall be treated in accordance with the procedures set forth herein; and

- The following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient

information to permit the identification of the Creditor; (ii) any Ballot cast by an Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no proof of Claim was timely Filed; (iv) any unsigned Ballot or lacking an original signature; (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein.

## VII.  CONFIRMATION PROCEDURES

### A.  Confirmation Hearing

The **Confirmation Hearing will commence on February 16, 2011 at 10:30 a.m. (Eastern Standard Time)**, before The Honorable Peter J. Walsh, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

**The Plan Objection Deadline is 12:00 p.m. (noon) (Eastern Standard Time) on February 11, 2010.**

All Plan Objections must be Filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.

The Debtors' proposed schedule will provide Entities sufficient notice of the Plan Objection Deadline, which will be at least the 28 days as required by Bankruptcy Rule 2002(b). The Debtors believe that the Plan Objection Deadline will afford the Bankruptcy Court, the Debtors and other parties in interest reasonable time to consider the Plan Objections prior to the Confirmation Hearing.

> **THE BANKRUPTCY COURT WILL NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.**

Following the Disclosure Statement Hearing, the Debtors will publish the Solicitation Notice, which will contain, among other things, the Plan Objection Deadline, the Voting Deadline and the date the Confirmation Hearing is first scheduled, in the National Edition of *The New York Times* on a date no later than 15 days prior to the Voting Deadline to provide notification to those Entities that may not receive notice by mail.

**Plan Objections must be served on all of the following parties:**

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins
Jason M. Madron
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
***Counsel to the Debtors***

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler
919 North Market Street, Suite 1700
Wilmington, Delaware 19801
*Counsel to the Creditors' Committee*


**OTTERBOURG, STEINDLER, HOUSTON &**
**ROSEN, P.C.**
Andrew M. Kramer
230 Park Avenue
New York, New York 10169
*Counsel to Wachovia*

**KLEE, TUCHIN, BOGDANOFF & STERN LLP**
Thomas E. Patterson
1999 Avenue of the Stars
Los Angeles, California 90067
*Counsel to Ableco*


**CLERK OF THE BANKRUPTCY COURT**
United States Bankruptcy Court for the District of
Delaware
824 Market Street, 5th Floor, Courtroom 5
Wilmington, Delaware 19801

**UNITED STATES TRUSTEE**
David Klauder
Office of the United States Trustee for the District of
Delaware
844 King Street, Room 2207
Lockbox #35
Wilmington, Delaware 19899-0035


**B.     Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan
satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors and the Creditors'
Committee believe:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as the Plan proponents, will have complied with the applicable
  provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by
  law.

- Any payment made or promised under the Plan for services or for costs and
  expenses in, or in connection with, the Chapter 11 Cases, or in connection
  with the Plan and incident to the case, has been disclosed to the Bankruptcy
  Court, and any such payment: (1) made before the confirmation of the Plan
  is reasonable; or (2) subject to the approval of the Bankruptcy Court as
  reasonable, if it is to be fixed after confirmation of the Plan.

- Either each holder of an Impaired Claim has accepted the Plan, or will
  receive or retain under the Plan on account of such Claim, property of a
  value, as of the Effective Date of the Plan, that is not less than the amount
  that such holder would receive or retain if the Debtors were liquidated on that
  date under chapter 7 of the Bankruptcy Code, including pursuant to section

1129(b) of the Bankruptcy Code for Equity Interests deemed to reject the Plan.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent the holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims and Other Secured Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan.

- The Debtors have paid the required filing fees pursuant to 28 U.S.C. § 1930 to the clerk of the Bankruptcy Court.

- In addition to the filing fees paid to the clerk of the Bankruptcy Court, the Debtors will pay quarterly fees on the last day of the calendar month, following the calendar quarter for which the fee is owed in each of the Debtors' Chapter 11 Cases for each quarter (including any fraction thereof), to the Office of the U.S. Trustee, until the case is converted or dismissed, whichever occurs first.

### 1. Best Interests of Creditors Test

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property with a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the bankruptcy court must: (a) estimate the Cash liquidation proceeds that a chapter 7 trustee would generate if each of the debtor's chapter 11 cases were converted to a chapter 7 case and the assets of such debtor's estate were liquidated; (b) determine the liquidation Distribution that each non-accepting holder of a claim or an equity interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare such holder's liquidation Distribution to the plan Distribution that such holder would receive if the plan were confirmed.

In chapter 7 cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of

44

unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.

The Debtors and the Creditors' Committee believe that the value of any Distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan because, among other reasons, (i) conversion to chapter 7 would require appointment of a chapter 7 trustee, which likely would delay and reduce the present value of Distributions; and (ii) the fees and expenses of a chapter 7 trustee would likely further reduce Cash available for Distribution.

## 2. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless the Plan contemplates such liquidation. Indeed, section 1123(b)(4) of the Bankruptcy Code permits liquidation plans that "provide for the sale of all or substantially all of the property of the estate, and the Distribution of the proceeds of such sale among holders of claims or interests" in chapter 11 proceedings and, thus, such a plan does not violate the requirements of section 1129(a). Moreover, when a liquidating plan of reorganization is tested against section 1129(a)(11), the feasibility standard is greatly simplified. In the context of a liquidating plan, feasibility is established by demonstrating the debtor's ability to make the payments anticipated by the plan and specifying the timing of the debtor's liquidation. Notably, there is no requirement that such payments will be guaranteed.

The Plan provides for the liquidation of the Debtors by the transfer and sale of property and payment of the debts. Further, the Debtors maintain that there is a reasonable expectation that the payments required to be made during the term of the Plan will, in fact, be made.

## 3. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described below, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such obligation; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

The Classes 2 and 5 are Impaired under the Plan, and as a result, the holders of Claims in such Classes are entitled to vote on the Plan. Pursuant to section 1129 of the Bankruptcy Code, the holders of Claims in the Classes 2 and 5 must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Classes, and without considering whether the Plan "discriminates unfairly" with respect to such Classes, as both standards are described herein. As stated

above, Classes of Claims will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of each such Class (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan.

### 4.     Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes entitled to vote on the plan have not accepted it; *provided, however*, that the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

### 5.     No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 6.     Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class.

Secured Claims: The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that: (1) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (2) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

Unsecured Claims: The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (1) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

Equity Interests: The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirement that either: (1) the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest property of a value, as of the effective date of the plan, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such

46

holder is entitled; or (c) the value of such interest; or (2) if the class does not receive the amount as required under (1) hereof, no class of equity interests junior to the non-accepting class may receive a Distribution under the plan.

To the extent that either Class 2 or 5 vote to reject the Plan, the Debtors further reserve the right to seek (1) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (2) modify the Plan.

The votes of holders of Class 6 Equity Interests are not being solicited because, under Article III of the Plan, there will be no Distribution to the holders of Class 6 Equity Interests Claims and all Class 6 Equity Interests will be deemed canceled and will be of no further force and effect, whether surrendered for cancellation or otherwise. Class 6 is, therefore, conclusively deemed to have rejected the Plan pursuant to section 1129(b) of the Bankruptcy Code.

Notwithstanding the deemed rejection by Class 6 and any Class that votes to reject the Plan, the Debtors do not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Equity Interests. The Debtors believe that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

### C. Contact for More Information

Any interested party desiring further information about the Plan may contact legal counsel to the Debtors by writing to Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn.: Jason M. Madron and/or calling (302) 651-7700.

## VIII. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

### A. Certain Bankruptcy Law Considerations

#### 1. Parties-in-Interest May Object to the Debtors' Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors and the Creditors' Committee believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created seven Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

47

2. **Failure to Satisfy Vote Requirement**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

3. **Debtors May Not Be Able to Secure Confirmation of the Plan**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, including, among other requirements, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of Distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of Distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement, the balloting procedures and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Confirmation of the Plan is also subject to certain conditions as described in the Plan. If the Plan is not confirmed, it is unclear what Distributions, if any, holders of Allowed Claims would receive with respect to their Allowed Claims.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such a less favorable treatment could include a Distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no Distribution of property whatsoever under the Plan.

4. **Nonconsensual Confirmation**

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtors believe that the Plan satisfies these requirements and the Debtors may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

RLF1 3761176v. 1

5. **Debtors May Object to the Amount or Classification of a Claim**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Any holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

6. **Risk of Non-Occurrence of the Effective Date**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

7. **Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan**

The Distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect Distributions available to holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

B. **Risk Factors That May Affect Distributions Under The Plan**

1. **Debtors Cannot State with any Degree of Certainty What Recovery Will Be Available to Holders of Allowed Claims in Voting Classes**

A number of unknown factors make certainty in creditor recoveries impossible. First, the Debtors cannot know with any certainty, at this time, the number or amount of Claims in Classes 2 and 5 that will ultimately be Allowed. Second, the Debtors cannot know with any certainty, at this time, the number or size of Claims senior to Classes 2 or 5 or unclassified Claims that will ultimately be Allowed.

2. **Actual Amounts of Allowed Claims May Differ from the Estimated Claims and Adversely Affect the Percentage Recovery on General Unsecured Claims**

The Claims estimates set forth herein are based on various assumptions. The actual amounts of Allowed Claims may differ significantly from those estimates should one or more underlying assumption prove to be incorrect. Such differences may adversely affect the percentage recovery to holders of such Allowed Claims under the Plan.

C. **Disclosure Statement Disclaimer**

1. **Information Contained Herein is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

49

2. **Disclosure Statement Was Not Approved by the Securities and Exchange Commission**

Although a copy of this Disclosure Statement was served on the Securities and Exchange Commission, and the Securities and Exchange Commission was given an opportunity to object to the adequacy of this Disclosure Statement before the Bankruptcy Court approved it, this Disclosure Statement was not Filed with the Securities and Exchange Commission under the Securities Act or applicable state securities laws. Neither the Securities and Exchange Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3. **Disclosure Statement May Contain Forward Looking Statements**

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The Distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual Distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

4. **No Legal or Tax Advice Is Provided to You by this Disclosure Statement**

**This Disclosure Statement is not legal advice to you.** The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

5. **No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, holders of Allowed Claims or Equity Interests or any other parties-in-interest.

6. **Failure to Identify Litigation Claims or Projected Objections**

No reliance should be placed on the fact that a particular litigation Claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtors may seek to investigate Claims, File and prosecute objections to Claims and Equity Interests, and the Liquidating Trustee may object to Claims or bring Causes of Action after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such Claims, Causes of Action or Objections to Claims.

50

7. **No Waiver of Right to Object or Right to Recover Transfers and Assets**

The vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtors or the Liquidating Trustee to object to that holder's Allowed Claim, or to bring Causes of Action or recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any Claims or Causes of Action of the Debtors or their respective Estates are specifically or generally identified herein.

8. **Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9. **Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update**

The Debtors and the Creditors' Committee make the statements contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors and the Creditors' Committee have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors and the Creditors' Committee nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors and the Creditors' Committee may subsequently update the information in this Disclosure Statement, the Debtors and the Creditors' Committee have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

10. **No Representations Outside the Disclosure Statement Are Authorized**

No representations concerning or relating to the Debtors, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. In deciding whether to vote to accept or reject the Plan, you should not rely upon any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, you should promptly report unauthorized representations or inducements to the counsel to the Debtors, the counsel to the Committee and the United States Trustee.

D. **Liquidation Under Chapter 7**

If the Plan is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtors for Distribution in accordance with the priorities established by the Bankruptcy Code.

RLF1 3761176v. 1

## IX.  CONCLUSION

THE DEBTORS AND CREDITORS' COMMITTEE SUBMIT THAT THE PLAN COMPLIES IN ALL RESPECTS WITH CHAPTER 11 OF THE BANKRUPTCY CODE AND RECOMMEND TO HOLDERS OF IMPAIRED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN THAT THEY VOTE TO ACCEPT THE PLAN.  THE DEBTORS REMIND SUCH HOLDERS THAT, TO BE COUNTED, EACH BALLOT, SIGNED AND MARKED TO INDICATE THE HOLDER'S VOTE MUST BE RECEIVED BY THE VOTING AGENT NO LATER THAN 5:00 P.M. (PACIFIC STANDARD TIME) ON OR BEFORE FEBRUARY 11, 2011, AT THE FOLLOWING ADDRESS:   KURTZMAN CARSON CONSULTANTS LLC, ATTENTION:  HUB HOLDING CORP. TABULATION CENTER, 2335 ALASKA AVENUE, EL SEGUNDO, CA 90245.

Dated: January 6, 2011
       Wilmington, Delaware

           HUB HOLDING CORP.

           By: _____
           Its:   Chief Restructuring Officer


           HUB DISTRIBUTING, INC.

           By: _____
           Its:   Chief Restructuring Officer


           HUB DESIGNS, INC.

           By: _____
           Its:   Chief Restructuring Officer


           ONTARIO PURCHASING CORP.

           By: _____
           Its:   Chief Restructuring Officer


           MOST PURCHASING CORP.

           By: _____
           Its:   Chief Restructuring Officer

53

# EXHIBIT A

## PLAN

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **HUB HOLDING CORP., et al.,**[1] | ) | **Case No. 09-11770 (PJW)** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |

---

## FIRST AMENDED JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (Bar No. 2981)
Jason M. Madron (Bar No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Counsel for the Debtors and Debtors in Possession

**PACHULSKI STANG ZIEHL & JONES LLP**

Bradford J. Sandler (Bar No. 4142)
919 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for the Official Committee of Unsecured Creditors


Dated: January 6, 2011
        Wilmington, Delaware

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Hub Holding Corp. (4718), Hub Distributing, Inc. (0682), Hub Designs, Inc. (6076), Ontario Purchasing Corp. (6120) and MOST Purchasing Corp. (6052). The Debtors' corporate mailing address is 1304 SW 160th Avenue, Box 145, Sunrise, FL 33326.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ...................................................1
    A.    Defined Terms.................................................................................................1
    B.    Rules of Interpretation....................................................................................8
    C.    Exhibits............................................................................................................9

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS .............................................................9
    A.    Administrative Claims....................................................................................9
    B.    Priority Tax Claims .........................................................................................9

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS...................................................................................................................10
    A.    Summary .......................................................................................................10
    B.    Classification and Treatment of Claims and Equity Interests .....................10
    C.    Special Provision Governing Unimpaired Claims........................................12
    D.    Non-Consensual Confirmation......................................................................12

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................................12
    A.    Appointment of a Liquidating Trustee and a Liquidating Trust Committee.....................12
    B.    The HUB Liquidating Trust ..........................................................................12
    C.    Rights and Powers of the Liquidating Trustee .............................................13
    D.    Fees and Expenses of the HUB Liquidating Trust .......................................13
    E.    Semi-Annual Reports to Be Filed by the HUB Liquidating Trust ...............13
    F.    Directors/Officers/Equity/Assets of the Debtors on the Effective Date.......14
    G.    Liquidation of the Debtors ............................................................................14
    H.    Operations of the Debtors Between the Confirmation Date and the Effective Date ........14
    I.    Establishment of the Administrative Bar Date .............................................15
    J.    Term of Injunctions or Stays.........................................................................15
    K.    Cancellation of Equity Interests ...................................................................15
    L.    Creditors' Committee....................................................................................15

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ..........................................................16
    A.    Initial Distribution Date.................................................................................16
    B.    Disputed Reserves .........................................................................................16
    C.    Quarterly Distributions..................................................................................16
    D.    Record Date for Distributions .......................................................................16
    E.    Delivery of Distributions...............................................................................17
    F.    Surrender of Cancelled Instruments and Securities......................................18
    G.    Lost, Stolen, Mutilated or Destroyed Instrument or Security......................18
    H.    Manner of Cash Payments Under the Plan or the Liquidating Trust Agreement............18
    I.    Time Bar to Cash Payments by Check...........................................................18
    J.    Limitations on Funding of Disputed Reserves .............................................19
    K.    Compliance with Tax Requirements .............................................................19
    L.    No Payments of Fractional Dollars ...............................................................19
    M.    Interest on Claims..........................................................................................19
    N.    No Distribution in Excess of Allowed Amount of Claim .............................19
    O.    Setoff and Recoupment .................................................................................19

i

ARTICLE VI. DISPUTED CLAIMS...........................................................................................20
    A.    No Distribution Pending Allowance ........................................................................20
    B.    Resolution of Disputed Claims................................................................................20
    C.    Objection Deadline..................................................................................................20
    D.    Estimation of Claims ..............................................................................................20
    E.    Disallowance of Claims..........................................................................................20
    F.    Adjustment to Claims Without Objection. ..............................................................21

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........21
    A.    Rejection of Executory Contracts and Unexpired Leases ................................21
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................21

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................................22
    A.    Conditions Precedent to the Effective Date..............................................................22

ARTICLE IX. RELEASE, INJUNCTIVE AND RELATED PROVISIONS ...........................................22
    A.    Compromise and Settlement....................................................................................22
    B.    **Releases** ................................................................................................................22
    C.    **Exculpation** ...........................................................................................................23
    D.    Preservation of Rights of Action .............................................................................24
    E.    **Release and Injunction**.........................................................................................25
    F.    **Releases of Liens**................................................................................................25
    G.    **Substantive Consolidation**. ................................................................................26

ARTICLE X. RETENTION OF JURISDICTION ...............................................................................26

ARTICLE XI. MISCELLANEOUS PROVISIONS .............................................................................28
    A.    Final Fee Applications.............................................................................................28
    B.    Payment of Statutory Fees.......................................................................................28
    C.    Modification of Plan................................................................................................28
    D.    Revocation of Plan ..................................................................................................28
    E.    Successors and Assigns ...........................................................................................28
    F.    Governing Law........................................................................................................28
    G.    Reservation of Rights ..............................................................................................29
    H.    Article 1146 Exemption ..........................................................................................29
    I.    Section 1125(e) Good Faith Compliance ................................................................29
    J.    Further Assurances ..................................................................................................29
    K.    Service of Documents .............................................................................................29
    L.    Filing of Additional Documents..............................................................................30
    M.    No Stay of Confirmation Order................................................................................30
    N.    Aid and Recognition................................................................................................30

RLF1 3761175v. 1